We're here. Good. Go ahead. Thank you for putting my case last. Well, we're happy you made it. You know, I know these days I'm sure Judge Hug knows and Judge Fletcher that air travel has gotten more difficult because airlines seem to be ready or readier to cancel flights when they don't have no passengers or whatever the reason is. So we understand your difficulty, but we're glad you made it going over the hill. Do you fly or do you drive? We're close enough to do either. So thank you, Your Honors. We're here today on an appeal from a decision dismissing this case by Judge David Warner Hagan in the District of Nevada. My name is Jeffrey Dickerson. I represent the appellant in the case. The motion to dismiss below presented basically three questions to the district court. One was whether the 11th Amendment precluded an action against Jackie Crawford, one of the defendants in the case. Secondly, whether the failure to allege specifically under color of state law was detrimental, fatal to the case. And lastly, whether or not the doctrine of claim preclusion should apply to the case. The district court, as you know from reviewing the record, first addressed the 11th Amendment claim by noting that there was no allegation that she was acting in her official capacity. There was an allegation that she was acting in her individual capacity, but that was disregarded apparently by the district court. And he found that it was in essence an action. The action against Crawford was in essence an action against the state and therefore barred by the 11th Amendment. And then he turned to the color of law argument and noted that there was no specific allegation of that, but he specifically went further and stated that we had not alleged facts sufficient to warrant a conclusion than any of the defendants had engaged in actionable conduct designed to violate a constitutional right. We're here on appeal from that decision. With respect to the Jackie Crawford defendant in the case and whether or not the 11th Amendment applies, we have named her in her individual capacity. And if that's unclear, we can certainly correct that with an amendment, which the district court should have given us leave upon dismissal, but did not. The cases in this circuit are clear. You didn't ask for leave, did you? No, I did not. Not in this case, Your Honor. But the case law that we've cited in our brief is clear that in a situation like this where, unless it's just blatantly apparent that you can't fix the error, you should grant leave to amend. And that was not done in this case. But you're representing now that you believe you can amend it. I do believe we can amend to cure any error that this Court sees in the pleading. I don't think that there is a problem with that, as I argue to the district court. But if there is, we can fix it. We've clearly alleged in there that at the time this conduct occurred, Crawford was a warden at the Lovelock Correctional Facility and therefore the highest appointing authority at that facility where my client worked. Later, she became director of the Department of Prisons. So she was an actor at the time that some of this conduct occurred. And then she became director. And now if we want to reinstate, the district court wants to order reinstatement at the end of this case, she's the proper party defendant as the official to order prospective injunctive relief in that regard. So she has kind of a dual role in this case, as we see it, simply by virtue of her escalation to the throne of directorship of the department. So that takes care of the first issue. And then the second issue with the district court was the under color of law. And we have alleged that these people were acting under their official umbrella, if you will, named in their individual capacities, but clearly named also as officers of the state. So I think that comes close. But if it doesn't work, then we can amend and add under color of law to state that specific element. I thought it was apparent that we were alleging a 1983 claim and that I practice civil rights, and that's what this claim is, Judge, but he wanted to be technical about it and not grant this leave to amend, and I think that that was an error. And then with respect to whether or not the individual defendant's actionable conduct is alleged to them, we've alleged that the defendants caused certain adverse actions in the employment setting, termination, hostile environment, excessive scrutiny, that they were causers of these in one form or another. That's a specific allegation. And this Court knows, beginning with Johnson v. Duffy and cases forward from that, that in the Section 1983 setting there is causer liability. If a person causes a series of events that results foreseeably in a violation of a constitutional right, that person can be held liable under Section 1983. And that's the theory that's played in the complaint, and we also tie that in with respect to the motivating factor. We allege that all of the defendants were aware of the protected activity we allege under the First Amendment and that they acted motivated thereby. So I think that the complaint states a claim for relief for First Amendment retaliation under Section 1983 and that the district court was in error in that regard. I'd like to turn now to the claim preclusion argument, which is one that the district court did not address, but this Court may want to look at it on de novo review. I don't know, but I'll address it anyway. The main argument here is that, as I understand, there are two different sets of statutes in Nevada. There's Chapter 284 that deals with personnel matters, and that's where you have your personnel grievances. If you're demoted, suspended, or dismissed, you have a right to appeal to a hearing officer. That's what happened in this case. Under Chapter 281, that's the state's whistleblower statute. Unlike a lot of other states, such as Texas, New Jersey, Mississippi, and so forth, they have a private cause of action for a whistleblower situation with remedies. We don't have that in Nevada. This is an administrative remedy, and if you look at the statutory scheme, you'll see that it's very restricted and that the elements required to prove up a violation of that law are entirely different from the elements required to prove up a First Amendment violation in this case. In that case, you have to show that the person reported improper governmental action, and the statute specifically at 281.611.1, sub 1, describes what those actions are, versus the First Amendment, which says, is it speech on a matter of public concern? Does it have importance to the community in evaluating the performance of government? Instead of these specific categories that are in Chapter 281, the next question is, was there retaliation? What is retaliation? Under the First Amendment, in this Court's analyses, we've seen that the test is, under Cole's Alter, for instance, one of the most recent cases, and Buck v. County of Clackamas out of Washington, the test is whether or not the conduct is reasonably likely to deter. That's the test for whether a conduct is retaliatory under the First Amendment. Under Nevada statute, the test is entirely different. It's not that, and I would refer the Court to 281.611, sub 2. I have a copy of it here. Defining retaliatory action to list specific things, denial of adequate personnel to perform duties, a demotion, a suspension, a dismissal, a transfer, these types of things, not applying the reasonably likely to deter standard that we apply in determining whether retaliation has occurred under the First Amendment. In other words, what I'm getting at is we have entirely different cause of action for res judicata purposes. To analyze here, you're not looking at the same cause of action, even if this were a 281 appeal before the hearing officer. Well, counsel, he had a hearing in respect to wrongful termination. Yes. It was adverse to him. Yes. What was brought up? What was brought up or could have been brought up at that hearing? The statute's very clear, Your Honor, that the test, and if you look at the ---- I asked a specific question. Whether or not the dismissal of the employee was in the good of the public service, and the case law under that says what that means, there has to be substantial evidence to support the decision. Good cause, basically. That's the test. No, but isn't your client's position, must have been at the personnel hearing, that he was wrongfully discharged because he was discharged in retaliation for speaking up about these ---- about this wrongdoing? No. Wasn't that his case? No. The retaliation had nothing to do with that. What was his case as to why he was wrongfully discharged? Well, his case was that the ---- that his ---- Before the personnel board, I mean. Yes. Prior disciplinary matters were unrelated and therefore did not warrant progressive discipline, that the specific instance ---- And actually, the hearing officer bought part of the argument, that is, that this ---- the manner in which the gate was left open at the secure facility was something that he was not responsible for because of the situation. And the hearing officer actually excused that conduct but turned to the manner in which he reacted to be ---- to being found out in that regard. So are you telling us that under those Nevada statutes you referred to, that at a personnel hearing, the defendant can't raise the claim that I was wrongfully fired because I was fired in retaliation for speaking up about wrongdoing at this prison? I don't believe that would be a defense, Your Honor. The question is whether or not the employer's decision on that specific instance did the incident happen, was the gate left open, did the manner in which he responded to being discovered about that say, you ratted me out, I'm going to get you for that. That's what the allegation was. Was that true or not? Did it occur? The focus is on that at these hearings. The focus isn't on was there protected activity, was there adverse action as defined under First Amendment law, so on and so forth. And furthermore, Your Honor, the last point is that under Chapter 281, even if this were a Chapter 281 appeal, which it was not, the damages are not available. The statute specifically provides that the only thing that the hearing officer can do is order them to cease and desist the retaliatory action. I guess we need to talk about what could have been brought up at that hearing because he was apparently, according to the hearing officer, fired for cause. And you're not able to bring in at that hearing that, no, he was really being retaliated against and this was really just pretextual? Well, what could he have brought up at the hearing? I've never, I do these hearings, Your Honor, and I've never approached it from that standpoint because the hearing officer, first of all, the State goes first in these And then the employee's job is to shoot down those witnesses as they're being put on by the State and then mount a defense against that reason. Okay? And that's the context in which it happens. We're not the lead. We don't go first. We don't say. Well, I understand that, but your defense would be I shouldn't have been discharged because those reasons are pretextual and it was really retaliation. We could do that. I guess your question is not was it, but could it have been raised? Yes. And the question is could you do that? My position is, Your Honor, that the statute doesn't allow for that. Now, whether you could do that and get away with it, I don't know. But you certainly couldn't get the remedies, the same remedial scheme. You might be able to get your job back. And on that issue, I'm not sure that the availability of damages is a prerequisite to invoking res judicata as long as you can get some remedy. But you're about two minutes over your time. Right. See that? We'll give you one minute for rebuttal. All right. Thank you, Your Honor. Let's hear from the State. Good morning, Your Honor. My name is Craig Burkett. I'm a deputy attorney general for the State of Nevada. And I represent all of the defendants, Andrew Strong, Savoy, and Crawford. Could you speak up? Yes, I can. I want to address the res judicata issue first, because I think that that's the most compelling argument we have, although we, again, believe that the district court properly dismissed the case on a failure to state a claim basis. I want to just clarify, for the record, what actually happened at the administrative hearing process and discuss how that mirrors the complaint that is now being presented. In substance, the complaint that's now being presented is, oh, they were lying at the administrative hearing process, and I'm entitled to my job back. And I want to refer the court to the summary judgment motion. The exhibit attached is the findings of fact, conclusions of law, and decision of the administrative hearing officer. In those findings of fact, conclusions of law, and decision, it's at page 17. I'm just going to go ahead and paraphrase instead of reading through the whole thing. But there's an argument made in the administrative hearing that the co-correctional officers testified that there was a particular standard as to how a security log was supposed to be filled out. The administrative hearing officer notes here, the employee voiced the claim that each of those co-workers was lying and that the practice was not limited, as they claimed, to the pass-down log. Again, this is identical to the allegations that counsel is raising in this new complaint. I want to go to page 18, in which a retaliation claim is made. In page 18, the hearing officer specifically notes, the employee, who is Mr. Lambert, opined that the possibility existed that Ackerman, who was another correctional officer, was attempting to get back at him based on his sexual harassment complaint against Ackerman, but acknowledged that since the complaint first surfaced, he continued to work with Ackerman. So these issues were brought up. Retaliation was brought up in the administrative hearing process. And I just want to go on to point out that the administrative hearing officer was charged with deciding these precise issues and did decide the credibility issues with respect to the lying charges and the retaliation. He states at page 24 of this 26-page administrative hearing decision that the employee's credibility was shattered by his insistence that a past practice existed that excused his conduct and blatant claimed that all the other correctional staff, many called as his witnesses during his case in chief, were lying when they testified in diametrical opposition to his claim past practice. So the same issues that plaintiff's counsel is now presenting, or the plaintiff is presenting, Mr. Lambert is presenting, for the federal district court were decided in the state district court, were decided in the state administrative hearing, which the plaintiff had the right to appeal additionally to the district court level and did not. The site is NRS 281B.130. He had a right to go to district court and challenge that. And I would point, Your Honors, to the second claim for relief which plaintiff brings, which is a due process claim. The due process claim alleges that he was denied due process because the appeal hearing was a sham. That's exactly what an appeal to the district court would have been, that you denied me my due process. I have a right to either rehear these issues or what have you. That is an appeal to the district court that he had the right to do and he didn't do it. With respect to the retaliation claim, though, I did want to point out that in the complaint at paragraph 6G, they're alleging that defendants Strong, Savoy, and Andrews conspired to cause false testimony during the hearing. They're alleging at paragraph 6 that they were involved in falsification of evidence before the appeals tribunal. Both of these causes of action are related to the administrative hearing that was conducted following his termination. I want to point out the Ninth Circuit has consistently upheld administrative appeals hearings processes under the race due to Cauda claims preclusion framework. Well, what about the other fact that no damages are available before the administrative, in the administrative hearing process? Not true. He's entitled to his job back. The race due to Cauda analysis that this court uses, and we've cited in Miller. In fact, the plaintiff cites it in the case of CD construction versus Lemos. It's a 1987, this court's decision. It says there's four criteria that we're going to use to evaluate race due to Cauda. And the fourth one is the transactional nucleus of facts. And I've already talked about that. They are the same facts. But it also says in the first criteria, the issue is whether the rights of one of the parties would be impaired or destroyed by the second suit. The first suit asked for his job. The issue at stake was his continued employment. This second suit asked for, and I specifically am pointing to the first cause of action, asked for lost wages, attorney's fees, seniority, and benefits from the job. The second claim for relief asked for reinstatement with back pay. That was the interest at stake in the first administrative appeal. So he had the right to argue these issues, and they were argued. That was the right at stake in the administrative appeal, and those issues were decided. So the state is going to have basically be prejudiced if he gets to go and do it again because we argued these issues before the administrative hearing officer. We argued whether or not he was entitled to continued employment. Now he's asking for the federal court to decide the issue. At any rate, I just want to point out that the Miller case cites specifically these facts, analyzes these facts under the law consistently with what we're talking about here. Counsel, one of his claims gathered was what was characterized as harassment on the job. Now, that claim would still be alive if he were allowed to amend, would it not? Harassment on the job. He alleges in his first claim for relief, well, this isn't a Title VII claim. As I understand it, he alleges hostile environment, but there's no sex claim here. So I don't think anything survives. I don't think that with respect to the excessive scrutiny allegation, no, that does not survive. That is what was decided with respect to the administrative hearing. That's our position. I want to go back to the issue of Director Crawford's standing in this case. They're now asking to go back and re-argue the issue of Director Crawford's participation in this case. When we filed a motion to dismiss saying, Director Crawford, there's no allegations that she individually participated based on the complaint, therefore she's entitled to dismissal, the plaintiffs could have come back and presented an affidavit from perhaps the plaintiff and said, yes, she individually participated, here's how she did it. They didn't do that in opposition to our motion to dismiss. Yet now they're asking this court, after we've already gone through all the motions, it's two years down the road, and then now they say, oh, well, now we want to go ahead and give you additional evidence. But they had that opportunity. In fact, if they're going to say, well, we didn't know that the court was going to sui sponte dismiss on the failure to state a claim, well, they could have filed a motion for reconsideration and said, well, wait a second, now we have some more information we really want to give you.  They knew that these issues were before the court, yet they didn't do anything in terms of presenting admissible evidence to refute it. And they had the opportunity. Again, they knew that we were saying, look, you didn't present any allegations of individual participation by Director Crawford, and they didn't oppose that. So I don't think that they can come now here, or it's fair to the state or judicial economy, to now come and say, well, wait, now I want you to remand and give me another shot to do it. Well, they had a shot at the original motion filings. They had a shot to file a motion for reconsideration. The cases that they cite are cases of pro se litigants, where the court has certainly got reason to give pro se litigants additional opportunity to argue their cases and correct deficiencies that are procedural. But this is a case where counsel represented Mr. Lambert, and he had an opportunity to make these arguments, and they didn't do it. I want to make – I have some other arguments, but I want to respond to one other issue. The Nevada Administrative Code Provision 281 is the whistleblower statute. That statute is part of the administrative appeals process that Mr. Lambert had the opportunity to use. And, in fact, even – we would assert that he did it. He made an allegation that there was sexual harassment that he had alleged against a co-worker, and that that was the reason for Mr. Ackerman's testimony at the appeal. So either – if he didn't formally do it, he did it as a matter of reality. Thank you, Your Honor. Thank you. Mr. Butler. Maybe the issue is collateral estoppel. Maybe the issue is issue preclusion and not claim preclusion. Maybe the issue is, once we show the prime offense, the First Amendment case, the burden of proof shifts to the employer to show that, regardless of the protected activity, we would have terminated him anyway. And maybe that's where it comes into play. I just thought of that. And it seems that maybe that might work. And maybe that is a defense, a partial defense, a way for the state to save itself having to reprove things by submitting that decision to the district court to show, hey, this is what we would have done, and then it's our burden to come back and show additional evidence of retaliatory intent under the First Amendment. And that may be a solution to the problem. I don't know. Back to Your Honor's good question about whether it could have been brought. I urge the Court to look at the statutory scheme under 284 and under 281. And it's just different in both cases. There's not a similarity in terms of cause of action, which is the test. You pointed out, Your Honor, that the harassment issue is separate and apart from that. Well, is there anything left? If we find that Grace Judicata precludes anything about termination, what's left? Well, we've alleged excessive scrutiny, and we've also alleged that there was a hostile working environment. Was he in a protected class? No, he's in a protected class in that he's a citizen entitled to not be retaliated against based upon his First Amendment rights. We're not alleging a Title VII claim here. It's a First Amendment claim, Your Honor. What do you mean? You just said we're alleging excessive scrutiny. Yes, Your Honor. Is that something? Is there a constitutional right not to be subjected to excessive scrutiny on the job? Well, again, the test is whether or not it would easily deter a person from ‑‑ a reasonable person from engaging in First Amendment activity. So you need to look at what the scrutiny was. You need to look at what the harassment is. And for pleading purposes, we've alleged those adverse actions. It's for the rest of the case to determine what specifically those were. Thank you, Your Honors. All right. Thank you. Thank both counsel. This case is submitted for decision. Last case on today's calendar for the week. So the panel stands in adjournment. All rise.
judges: Hug, B Fletcher, Tashima